

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED101578 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | 1222-CR03969 |
| | ) | |
| DWAYNE HOUSTON, | ) | Honorable Timothy J. Wilson |
| | ) | |
| Appellant. | ) | FILED: August 18, 2015 |

## Introduction

Dwayne Houston (Defendant) appeals from the sentence and judgment entered following a jury trial convicting him of burglary in the first degree, attempted forcible rape, and sexual misconduct. On appeal he asserts the trial court abused its discretion in allowing certain testimony and plainly erred in failing to hold a hearing to determine whether juror misconduct occurred. The trial court did not abuse its discretion in allowing the challenged testimony and Defendant waived his claim of juror misconduct by not raising it at the earliest opportunity. We affirm.

## Background

The State charged Defendant as a prior and persistent offender with the class B felony of burglary in the first degree (Count I), the unclassified felony of attempted forcible rape (Count II), and the class B misdemeanor of sexual misconduct in the second degree (Count III). At trial, the following occurred. During *voir dire*, after the panel was sworn, the trial court had

Defendant stand and asked the panel members if anyone knew him. One juror indicated he possibly knew Defendant and was struck for cause. No other jurors, including juror Rose Clemons (Juror Clemons), indicated they knew Defendant. Also during *voir dire*, Juror Clemons stood and stated that she knew of no reason she could not be fair. The evidence at trial revealed the following.

On July 23, 2011, K.H. (Victim) and her male friend returned to her home around 2:30 a.m. They barricaded the door, as she often did because her home was located in a dangerous neighborhood, and her friend went to sleep on the couch and Victim went to bed upstairs. She awoke at some point after 4:00 a.m. when she felt someone, whom she identified as Defendant, in her bed kissing her. She reached out to touch the person's face and realized that the person in her bed was not her friend.[1] She began screaming and struggling, and Defendant attempted to remove her underwear. K.H. was able to get away, and she ran downstairs. She and her friend ran outside and called the police.

While they were waiting for the police, K.H. decided to go inside to get dressed. Once inside, she discovered that Defendant was still in her bed, where he had taken off all of his clothes and was masturbating. K.H. yelled at Defendant to get out of her house, and he slowly walked out while putting his clothes back on. After Defendant had left, her friend came back inside, and they locked the door and went upstairs to watch the street while they continued to wait for the police. They could see Defendant across the street, sitting on the steps. As they watched him, he approached her front door with his pants down while he continued to masturbate. Defendant yanked on her door knob, trying to get back in. K.H. recognized Defendant from the neighborhood, but she had never before spoken with him, invited him into

---

[1] K.H. testified she knew the person in her bed was not her male friend, because her friend has facial hair and is heavier than Defendant. Moreover, she testified that her friend is gay, and so she would have been surprised if he had been kissing her in the middle of the night.

2

her house, or given him permission to touch her. When the police arrived they witnessed Defendant standing in front of K.H.'s home pulling up his pants. Defendant appeared highly intoxicated. We discuss further details of the trial as necessary in the points on appeal.

After a trial, a jury found Defendant guilty on all three counts. Defendant does not challenge the sufficiency of the evidence supporting his convictions. At the start of the sentencing hearing, counsel for Defendant sought a ruling on his pending motion for new trial, asserting that in addition to the written grounds, he had just learned that Defendant knew one of the jurors, Juror Clemons. Counsel asserted that Juror Clemons had contacted Defendant's family to let them know she was on the jury, and that Juror Clemons and Defendant had dated in the past, but she did not disclose during *voir dire* that she knew Defendant. Counsel did not request an evidentiary hearing to provide testimony on the new claim and did not submit to the court any affidavits in support of the new claim. The trial court denied the motion for new trial, stating:

> [T]he question was asked to the entire panel if anyone knew of the participants, lawyers or the defendant. No one indicated a distinct knowledge of anyone. ... Without knowledge of [a relationship between Clemons and Defendant], I mean, to me, I have to take their answers under oath at face value. The defendant was asked to rise, clear view of the entire jury panel, and no one disclosed [knowing him]. So I take that, the fact that no one acknowledged that, at face value. So the motion is preserved and overruled.

The trial court sentenced Defendant to concurrent terms of seventeen years' imprisonment in the Missouri Department of Corrections on Counts I and II, and six months in a medium security institution on Count III, which was discharged for time served awaiting trial. This appeal follows.

3

## Discussion

### Point I

In his first point on appeal, Defendant argues the trial court abused its discretion in overruling his objection and allowing the State to ask Victim to testify about whether she continued to live in the same house after the incident and whether she had planned to move from St. Louis before the incident occurred, because this testimony was not directly related to any of the charged offenses, was inherently prejudicial, and had no probative value. We disagree.

We review the trial court's admission of evidence for an abuse of discretion. State v. Anderson, 76 S.W.3d 275, 276 (Mo. banc 2002). Missouri courts determine the admissibility of evidence by its relevance. Id. Relevance has two tiers: logical and legal. Id. Evidence is logically relevant if it tends to make the existence of a material fact more or less probable, and evidence is legally relevant if its probative value outweighs any costs related to its admission, such as unfair prejudice, confusion, misleading the jury, or cumulativeness. Id. Logical relevance has a very low threshold. Id. at 277. Moreover, we review challenges to the admissibility of evidence for prejudice, not mere error, and will reverse only when the error was so prejudicial that it deprived the defendant of a fair trial. Id.

During Victim's testimony, the following exchange occurred:

> [The State]: After this incident, did you continue living at 4237 Kossuth?
>
> [Victim]: No.
>
> [Counsel for defense]: Objection. Relevance.
>
> The Court: I'll permit some inquiry. Not extensive. You said no?
>
> [Victim]: No, I did not.

4

[The State]: Where did you go when you left?

[Victim]: I immediately moved. The next day, I put in for a transfer with my job to leave the city. Two to three weeks it took for them to answer, and I left.

[The State]: You left the city entirely?

[Victim]: I left the city and the state.

[The State]: Okay. Had you been planning on doing that prior to this incident?

[Victim]: No. .

[Counsel for defense]: Objection, your honor.

The Court: I'll allow the answer.

[Victim]: No.

In cases of sexual assault, the State may produce circumstantial evidence of the victim's psychological condition after the attack to prove lack of consent. State v. Burke, 719 S.W.2d 887, 889 (Mo. App. E.D. 1986). Lack of consent is an element of rape and attempted rape, and thus evidence tending to prove whether Victim consented to the sexual activity is logically and legally relevant to the crime charged. Section 566.030.1, RSMo. (Cum. Supp. 2013) ("A person commits the offense of rape in the first degree if he or she has sexual intercourse with another person who is incapacitated, incapable of consent, or lacks the capability to consent, or by the use of forcible compulsion"); see also State v. Dowell, 25 S.W.3d 594, 603 (Mo. App. W.D. 2000) (evidence that tends to prove element of crime charged is logically and legally relevant). Further, testimony that the victim made major life changes after an alleged sexual assault is relevant to the issue of whether the victim had consented to the sexual activity. See State v. Johnson, 637 S.W.2d 157, 161 (Mo. App. E.D. 1982).

5

Moreover, the evidence that Victim moved out of her house the day after the burglary and attempted rape was not prejudicial to Defendant. Prejudice occurs when the evidence is so inflammatory as to deprive the defendant of a fair trial, meaning that the evidence more likely than not had an effect on the outcome of the trial. State v. Evans, 455 S.W.3d 452, 455 (Mo. App. E.D. 2014). Outcome-determinative prejudice is when the erroneously admitted evidence so influenced the jury that there is a reasonable probability the jury would have acquitted but for the erroneously admitted evidence. State v. Black, 50 S.W.3d 778, 786 (Mo. banc 2001). Here, even if the challenged evidence was erroneously admitted, which we find that it was not, it was not so inflammatory as to deprive Defendant of a fair trial and did not, when balanced against the other evidence admitted at trial, affect the outcome of the trial. Thus, we find the trial court did not abuse its discretion in allowing the challenged evidence.

Point denied.

## Point II

In his second point on appeal, Defendant argues the trial court plainly erred in failing to hold an evidentiary hearing on his claim that Juror Clemons was not an impartial juror. We disagree.

Defendant concedes that because he did not include the claim of juror misconduct in his motion for new trial, he did not preserve this issue for appellate review. He thus requests plain-error review under Rule 30.20. Under plain-error review, we will reverse only if a plain error affecting substantial rights results in manifest injustice or a miscarriage of justice. State v. Floyd, 347 S.W.3d 115, 123-24 (Mo. App. E.D. 2011). We review for plain error using a two-step analysis. First, we determine whether the record facially establishes substantial grounds to believe plain error occurred, which is error that is evident, obvious, and clear. Id. If so, we then

6

consider whether the error resulted in manifest injustice or a miscarriage of justice. Id. Plain error review requires that the alleged error have a decisive effect on the verdict. See State v. White, 247 S.W.3d 557, 563 (Mo. App. E.D. 2007). However, if facially substantial grounds do not exist, this Court will decline to exercise its discretion to review the claim of plain error. Id. at 561 ("Rule 30.20 is no panacea which a criminal defendant can use to obtain appellate review of any alleged error that is unpreserved.").

"Venirepersons must have an 'open mind, free from bias and prejudice.'" State v. Ess, 453 S.W.3d 196, 203 (Mo. banc 2015). Likewise, venirepersons have the duty to answer all questions fully and truthfully during *voir dire*, because failing to do so can deprive counsel of information needed to exercise a peremptory challenge or challenge for cause. Id. Silence to an unequivocal question establishes juror nondisclosure, when the requested information was known to the venireperson. Id. at 204. A new trial on the basis of juror nondisclosure is appropriate when the juror's nondisclosure was intentional or if prejudice resulted from the unintentional nondisclosure. State v. Mayes, 63 S.W.3d 615, 625 (Mo. banc 2001).

However, the party claiming juror misconduct is required to bring this misconduct to the court's attention as soon as he learns of it and has the opportunity to do so. Id. Failure to do so will result in a waiver of review on that claim. See State v. Baumruk, 280 S.W.3d 600, 615 (Mo. banc 2009). "The rule requiring contemporaneous objections to the qualifications of jurors is well founded. It serves to minimize the incentive to sandbag in the hope of acquittal and, if unsuccessful, mount a post-conviction attack on the jury selection process." Id. (citation omitted). Sandbagging is the practice in which counsel or the defendant himself remains intentionally silent when a possible error occurs at trial, with the hope of preserving the issue for appeal if the trial court does not correct the error. See BLACK'S LAW DICTIONARY 1459 (9th ed.

7

2009). Such sandbagging tactics will not usually preserve the issue for appeal, because the defendant must make objections promptly to alert the trial court to the possible error. Id. Moreover, a defendant claiming juror misconduct during *voir dire* "must present evidence through testimony or affidavits of any juror, or other witness either at trial or at the hearing on his motion for new trial," or must "at a minimum, allege intentional concealment in his motion for new trial and file an affidavit from the juror setting forth the facts surrounding the alleged concealment." Mayes, 63 S.W.3d at 625-26 (internal quotation marks and citations omitted).

Here, during *voir dire*, Juror Clemons was silent in response to the question of whether any of the panel members knew Defendant. She further stood while Defendant was present in the courtroom and stated that she knew of no reason she could not be fair. Juror Clemons then served on the jury, which found Defendant guilty on all charges. Following the verdict, the trial court polled the jury and Juror Clemons stood in open court and confirmed that she had entered a verdict of guilty. Only immediately prior to sentencing did Defendant alert the court that he knew Juror Clemons.

It was Defendant's burden to make a timely and proper objection about members of the jury panel, and his failure to do so constitutes a waiver of his claim for juror misconduct. See Baumruk, 280 S.W.3d at 615. Here, it is not believable that Defendant, who was present in the courtroom during the entire trial, did not observe Juror Clemons during *voir dire* when she stood to answer a question, during the three-day trial, and again after the verdict when Juror Clemons individually stood while the trial court polled her verdict. Defendant failed, however, to acknowledge at any point during the proceedings prior to the sentencing hearing that he knew Juror Clemons or had an alleged relationship with her. If Defendant in fact knew Juror Clemons, we find his earlier silence to be an attempt to sandbag the trial court by not revealing this alleged

8

information when it first became available. It stretches the credulity of this Court that Defendant only realized he had dated Juror Clemons after the verdict was announced.[2] Rather, if Defendant's claims are in fact true, it is likely that he intentionally did not reveal this information because he wanted Juror Clemons to serve on the jury, in the hopes that she would be favorable to him and find him not guilty. Now, after Juror Clemons and the rest of the jury found him guilty, he complains of error. His claim of error is too late. See id. This is a classic example of sandbagging and demonstrates the reason for the requirement that a defendant must raise a jury issue when it first comes to light.

Moreover, it was Defendant's burden to prove juror misconduct through witness testimony or affidavits, but he presented no accompanying affidavits to the trial court in support of his claim that Juror Clemons knew Defendant. See Ess, 453 S.W.3d at 202. He did not inform the trial court he intended to produce supporting witnesses, such as Juror Clemons herself or family members who could support his claim. Defendant asserts on appeal that the trial court committed plain error in denying him the opportunity to produce evidence to support his claim, but his opportunity to produce evidence was when he brought the claim to the court's attention. He failed, however, to produce any supporting evidence. He merely asserted—for the first time—that he knew Juror Clemons and Juror Clemons knew him, which contradicted Juror Clemons' silence during *voir dire* in response to the question if any of the panel members knew Defendant. The trial court, without more evidence than Defendant's self-serving statement, believed Juror Clemons. We see no error in the trial court's credibility determination. See Mayes, 63 S.W.3d at 625 (no error in trial court denying motion for new trial on grounds of juror misconduct when defendant failed to offer evidence, either by affidavit or testimony, supporting

---

[2] At the time of trial, Defendant was 33 years old.

his claims); see also Ess, 453 S.W.3d at 202 (in general, trial court is free to believe all, part, or none of testimony presented).

With no evidence of evident, obvious, and clear error by the trial court, Defendant has failed to show plain error. See Floyd, 347 S.W.3d at 123-24. Point denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
Gary M. Gaertner, Jr., Judge

Philip M. Hess, P.J., concurs.
Angela T. Quigless, J., concurs.

10