

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110552 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Jefferson County |
| vs. | ) | |
| | ) | Honorable Antonio M. Manansala |
| CHRISTOPHER D. ROBERTSON, | ) | |
| | ) | |
| Appellant. | ) | Filed: June 27, 2023 |

## Introduction

Christopher Robertson ("Defendant"), appeals from a Jefferson County Circuit Court judgment after a jury convicted him of one count of second-degree sodomy, three counts of incest, and one count of first-degree sexual misconduct. Defendant raises three points on appeal. In Point I, Defendant argues the trial court abused its discretion in overruling defense counsel's objections to the testimony of the Victims' uncle stating Defendant was previously accused of molesting his stepdaughter and son because this propensity evidence was substantially more prejudicial than probative in that the jury was led to believe Defendant was not punished for the earlier allegations. In Point II, Defendant argues the trial court abused its discretion in overruling defense counsel's objections to the admission of a redacted court judgment finding Defendant previously sexually abused his stepdaughter and son because this propensity evidence was substantially more prejudicial than probative in that a civil judgment has a lower burden of proof

than a criminal conviction. In Point III, Defendant argues the trial court abused its discretion in overruling objections to testimony from the Victims' mother about Defendant's suicide attempts because this evidence is irrelevant to Defendant's guilt of the charged offenses and prejudicial in that the State used this evidence to bolster the Victims' credibility when Mother testified that the suicide attempts caused her to believe the allegations about Defendant.

Because the evidence about Defendant's prior uncharged sexual acts had considerable probative value and the danger of unfair prejudice from such evidence was not great, the probative value of the evidence did not substantially outweigh the danger of unfair prejudice. Thus, the trial court did not abuse its discretion by admitting the evidence. We deny Points I and II. Because Defendant opened the door to why Mother came to believe the Victims' allegations against Defendant and suicide attempts may be admissible to show consciousness of guilt, the trial court did not abuse its discretion in allowing Mother's testimony about Defendant's suicide attempts. We deny Point III.

We affirm.

### Factual and Procedural Background

Victim 1 and Victim 2 (together, Victims) were under the age of eighteen when the crimes occurred. Victim 1 is Victim 2's older sister, and they have other siblings. Defendant was married to Victims' mother ("Mother") and all of the children, except one, lived in the same house together at the time of the incidents. [1]

Defendant was charged with one count of second-degree attempted rape (Count I), two counts of second-degree sodomy (Counts II and III), five counts of incest (Counts IV, V, VI, VII,

---

[1] Defendant does not challenge the sufficiency of the evidence to sustain his convictions. We would prefer to omit the graphic detail contained in this opinion to spare the Victims. We detail only the facts necessary to address Defendant's specific points of alleged error. The detail is necessary to address the similarity between the prior acts and the charged acts.

and VIII) and one count of first-degree sexual misconduct (Count IX). Before trial, the State dismissed Counts I, II, IV, and VIII, and the remaining counts were renumbered for trial.

At trial in August 2021, Victim 1, Victim 2, Mother, Victims' maternal uncle ("Uncle"), a Children's Division investigator, and a detective who interviewed Victims testified. Defendant did not testify. On August 10, 2021, the jury found Defendant guilty on all counts: one count of second-degree sodomy, three counts of incest, and one count of first-degree sexual misconduct. On October 14, 2021, accepting the jury's recommendations, the trial court sentenced Defendant to five years' imprisonment as to Count I, three years' imprisonment as to each of Counts II–IV, and six months incarceration and a $1,000.00 fine as to Count V to be served consecutively.

This appeal follows.

**Standard of Review**

For evidence to be admissible, it must be logically and legally relevant. *State v. Prince*, 534 S.W.3d 813, 817 (Mo. banc 2017) (citing *State v. Blurton*, 484 S.W.3d 758, 777 (Mo. banc 2016)). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id.* (quoting *State v. Collings*, 450 S.W.3d 741, 756 (Mo. banc 2014)). "Legal relevance weighs the probative value of the evidence against its costs—unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Id.* at 818 (quoting *State v. Anderson*, 306 S.W.3d 529, 538 (Mo. banc 2010)). "If the prejudice of the logically relevant evidence outweighs its probative value, it should be excluded." *Id.*

"The trial court is in the best position to weigh the probative value of the evidence against its prejudicial effect." *State v. Taylor*, 504 S.W.3d 116, 122 (Mo. App. E.D. 2016) (citing *State v. Peal*, 393 S.W.3d 621, 625 (Mo. App. W.D. 2013)). Trial courts "retain wide discretion over issues of relevancy and admissibility of evidence." *Prince*, 534 S.W.3d at 818 (citing *Blurton*,

3

484 S.W.3d at 769). We review a trial court's decision to admit evidence for abuse of discretion. *State v. Williams*, 548 S.W.3d 275, 287 (Mo. banc 2018) (citing *Prince*, 534 S.W.3d at 818). "An abuse of discretion occurs when a trial court's ruling is clearly against the logic of the circumstances, and is so arbitrary and unreasonable as to indicate a lack of careful consideration." *Taylor*, 504 S.W.3d at 122 (citing *State v. Williams*, 420 S.W.3d 713, 719 (Mo. App. W.D. 2014)).

In reviewing a challenge to admissibility of evidence, "we will only reverse when the error was so prejudicial that it deprived the defendant of a fair trial." *Id.* (citing *State v. Houston*, 467 S.W.3d 894, 898 (Mo. App. E.D. 2015)). "Prejudice occurs when the evidence is so inflammatory as to deprive the defendant of a fair trial, meaning that the evidence more likely than not had an effect on the outcome of the trial." *Id.* (quoting *Houston*, 467 S.W.3d at 899). "If reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Williams*, 548 S.W.3d at 287 (quoting *Anglim v. Mo. Pac. R. Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992)).

**Discussion**

We address Points I and II together because both take issue with the same propensity evidence about judicial findings that Defendant previously sexually abused his son and stepdaughter. We address Point III separately.

*Points I & II: Admissibility of Evidence of Prior Sexual Abuse*

A. Evidence of Prior Sexual Abuse

The trial court allowed an exhibit to be published to the jury with language excerpted from a certified copy of a termination of parental rights case for Defendant's biological son which read:

4

Family Court Finding

The Court makes the following finding by clear, cogent, and convincing evidence*:

The juvenile, [Defendant's son] has been abused or neglected by his father [Defendant] in that the father sexually abused the juvenile and repeatedly committed severe and repeated acts of sexual abuse against [Defendant's former stepdaughter], the juvenile's sister and also sexually abused the juvenile, [Defendant's son].

This Court finds that [Defendant] sexually abused [his former stepdaughter] by placing his penis inside of her mouth, repeatedly forcing her to touch his penis with her hand and forcing her to place her naked body next to and on top of his.

The Court finds that [Defendant] abused [his son] by inappropriately touching his penis through his clothing.

*Clear cogent and convincing evidence is evidence that instantly tilts the scales in favor of a finding when weighted against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true.

During the State's direct-examination of Uncle, he testified to how Defendant's sexual abuse of Victims was first discovered:

Q      So I'm going to direct your attention to on or about May 28, 2018. Is that the day that the kids came over to swim?

A      Roughly. Approximately. I don't know the exact date, but they came over to swim a day.

Q      And you may have already said this but which kids came over to swim?

A      [the Victims' sister and the Victims].

Q      Did you spend any time at your place before actually going to the pool?

A      Yes, we did. We were all getting something to eat and getting dressed for the pool, you know.

Q      And what kind of place were you living at, at the time? Was it an apartment complex or --

A      Apartment complex. It was a three-bedroom apartment.

Q      So when you were at that apartment getting ready, did any of the girls make any statements that you found unusual?

A      Yes. My youngest niece, [the Victims' sister], said that she could keep a secret. And...

Q      Is that all she said or anything else?

5

A      Well, that was the first part. She said, I can keep a -- you know, she can keep a secret. And the more I, you know, kind of listened to what she was saying. I was, like, you know – things that I have heard before, made me start thinking, why is she saying this, you know.

. . .

Q      Did she say anything else?

A      Yes, she said she hated [Defendant].

. . .

Q      Before you went down to the pool, did you have any further discussion with [Victims' sister] about those statements that I hate [Defendant] and --

A      No. No. I didn't have them -- go ahead.

Q      Well, you said – did you keep thinking about it then?

A      Yeah, I kept thinking about it.

Q      Why?

A      Because there was prior accusations against [Defendant] for --

. . .

Q      Okay. So you've said that part of the reason that you kept thinking about [the Victims' statement was because you were aware of some previous information about [Defendant]?

A      Yes.

Q      What was that information that you were familiar with?

A      That his son was in state custody and there was allegations of molestation on -- I know of his stepdaughter and I think his son, even. I ain't for sure on that one though.

. . . .

B. Party Positions

In Point I, Defendant argues the trial court abused its discretion in overruling defense counsel's objections to the testimony of Uncle stating Defendant was previously accused of molesting his stepdaughter and son because this propensity evidence was substantially more prejudicial than probative in that the jury was led to believe Defendant was not punished for the earlier allegations. In Point II, Defendant argues the trial court abused its discretion in overruling

6

defense counsel's objections to the admission of a family court judgment finding Defendant previously sexually abused his stepdaughter and son because this propensity evidence was substantially more prejudicial than probative in that a civil judgment has a lower burden of proof than a criminal conviction.

Defendant argues even though evidence of previous "allegations of molestation of [Defendant's] stepdaughter and son" from a prior relationship may be probative as to establish Defendant's "propensity to commit the crime charged," it must still be weighed "against its prejudicial impact." Mo. Const. art. I, § 18(c); *see also Prince*, 534 S.W.3d at 818. And Defendant contends, here, the probative value of the evidence was "substantially outweighed by the danger of unfair prejudice." Mo. Const. art. I, § 18(c); *see also Prince*, 534 S.W.3d at 818. Defendant argues, as discussed in *State v. Minor*, there is a danger of unfair prejudice "generated by the admission of unadjudicated sexual allegations." 648 S.W.3d 721, 739 (Mo. banc 2022) (Powell, J., concurring). Defendant references Judge Powell's concurrence where, as explained by Defendant, Judge Powell "advised" trial courts to "rarely admit allegations of unadjudicated prior criminal offenses, as that will result in confusion, unfair prejudice, and ultimately, retrial." *Id.* at 741. Defendant notes the risk unfair prejudice is high here because the previous sexual allegations were unadjudicated because they come from "Children's Division records," not "prior child sex convictions." *Compare id.* at 739 (jury not shown records of prior convictions) *with Williams*, 548 S.W.3d at 292 (jury shown records of prior convictions) *and State v. Lutes*, 557 S.W.3d 384, 390 (Mo. App. W.D. 2018) (jury shown records of prior convictions). Defendant contends the "manner in which the state introduced [Defendant's] prior allegation increased the danger of unfair prejudice." Defendant asserts unlike in *Williams*, where "a stipulation was read to the jury," and *Lutes*, where "an officer read certified copies of the prior

convictions to the jury," here, the trial court "allowed the State to inquire of a family member regarding prior uncharged allegations against [Defendant]." *Williams*, 548 S.W.3d at 292; *Lutes*, 557 S.W.3d at 390.

As to the family court findings themselves (Point II), Defendant notes a jury may "might be misled" because the family court findings involved a "lower burden of proof on the State." So, Defendant argues this "increased the danger that the jury simply convicted [Defendant] because they believed he escaped punishment for his past alleged criminal acts." *Williams*, 548 S.W.3d at 292. Thus, Defendant argues the "risk of unfair prejudice is too great" and his "case must be retried."

The State argues the trial court did not abuse its discretion in admitting evidence that Defendant previously sexually abused his son and stepdaughter because this evidence was admissible under article I, section 18(c) of the Missouri Constitution. The State argues Defendant's "prior sexual acts" against his son and stepdaughter "were highly probative of his propensity to commit the charged sexual offenses against [Victims] because of the similarities between the victims and the alleged acts." Mo. Const. art. I, § 18(c); *Williams*, 548 S.W.3d at 289. The State also contends the "the probative value of the propensity evidence was enhanced" given "[t]he unique evidentiary challenges presented by this type of case and the defense's attack upon the credibility of the [S]tate's witnesses, including" the Victims. *Williams*, 548 S.W.3d at 290; *see also State v. Brammer*, 614 S.W.3d 18, 27 (Mo. App. E.D. 2020).

Additionally, the State asserts the "high probative value of the evidence of Defendant's prior sexual acts . . . was not substantially outweighed by any related danger of unfair prejudice." The State argues "the danger of unfair prejudice was significantly limited" because the evidence of Defendant's prior sexual acts was presented by way of short, dispassionate judicial findings of

Defendant's acts, rather than live testimony by the alleged victims or other witnesses." *See Williams*, 548 S.W.3d at 290; *State v. Boyd*, 659 S.W.3d 914, 924 n.11 (Mo. banc 2023); *Prince*, 534 S.W.3d 821; *Lutes*, 557 S.W.3d at 394; *Brammer*, 614 S.W.3d at 27. The State also notes the trial court, "in an effort to eliminate this potential danger of prejudice," expressly "required the jury be informed the family court's findings were made under the standard of 'clear, cogent, and convincing evidence'" and required this "standard be defined for the jury in State's Exhibit 1." So, the State argues, along with Instruction No. 4 defining the standard of beyond a reasonable doubt, the jury was specifically "informed that the family court's findings were made under a different standard of proof than that applicable in a criminal case and as to how those two standards differed." The State also notes the trial court instructed the jury in Instruction No. 11 "[t]he defendant is on trial only for the offenses charged" and that it "may not find the defendant guilty only because [it] believe[s] he may have been involved in or committed other offenses or bad acts in the past," which was supported during trial and closing argument.

As to Uncle's testimony about Defendant's prior acts of sexual abuse, the State argues "aside from the purpose of demonstrating Defendant's propensity to commit the charged offenses," Uncle's "testimony was admissible to present a complete and coherent picture of the events that transpired . . . ." *See Prince*, 534 S.W.3d at 818 (quoting *State v. Schneider*, 483 S.W.3d 495, 505 (Mo. App. E.D. 2016)). Thus, the State argues the trial court did not abuse its discretion in admitting evidence regarding Defendant's prior sexual acts.

### C. Analysis

Evidence of prior uncharged crimes and bad acts is generally inadmissible to show the defendant's propensity to commit such crimes. *See State v. Miller*, 372 S.W.3d 455, 473 (Mo. banc 2012) (quoting *State v. Gilyard*, 979 S.W.2d 138, 140 (Mo. banc 1998)). But there are

exceptions where "otherwise inadmissible evidence may be admitted." *Prince*, 534 S.W.3d at 818 (quoting *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011)). Evidence "of uncharged crimes that is part of the circumstances or the sequence of events surrounding the offense charged may be admissible 'to present a complete and coherent picture of the events that transpired.'" *Id.* (quoting *Schneider*, 483 S.W.3d at 505). Additionally, in 2014, the Missouri Constitution was amended to reflect the longstanding "practice of admitting evidence of the defendant's prior sexual misconduct for purposes of proving the defendant's propensity to commit the sex offense with which he was charged." *Brammer*, 614 S.W.3d 18, 27 (quoting *Williams*, 548 S.W.3d at 281). The amendment states:

> Notwithstanding the provisions of sections 17 and 18(a) of this article to the contrary, in prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged. The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

Mo. Const. art. I, § 18(c).

"Even though the [trial] court is not required to make this finding in so many words, it nevertheless is essential that the evidence meet the balancing test for legal relevance set forth in the second sentence of the amendment." *Williams*, 548 S.W.3d at 288. And this Court looks to "[e]vidence in the record that the [trial] court analyzed relevant factors and engaged in the balancing required under article I, section 18(c)" in reviewing the trial court's "evidentiary ruling with the level of deference that the 'abuse of discretion' standard requires." *Id.*

Here, Defendant moved to prohibit the State from introducing evidence of the prior sexual abuse allegations, including the family court findings and testimony from Uncle. The State then notified Defendant before trial it intended to offer evidence of his prior sexual

offenses against his son and stepdaughter from a previous relationship. Defendant opposed the introduction of this evidence and the trial court heard argument from the parties, along with written motions and responses, addressing the probative value of the evidence and the danger of unfair prejudice. The trial court considered whether the danger of any unfair prejudice may be mitigated by limiting what portions of the family court findings were offered, the impact of the lower burden of proof required in civil cases, the availability of an instruction to the jury on the different burdens, and the way the evidence was presented. The trial court ultimately concluded it would allow the family court findings Defendant committed sexual acts against his son and stepdaughter under the lower burden of proof. The trial court stated it would allow the propensity evidence because the prior acts "were similar in nature . . . to the current charges . . . ." and were "admissible to show Defendant's motive and to present a complete and coherent picture of events." But, the trial court expressly stated it did "not want the jury to hear that [Defendant's parental] rights were terminated, as far as the judgment goes" because the trial court "believe[d] that's more prejudicial than probative." The trial court further stated to avoid confusion by the jury on the lower burden of proof, it would require the State to "prepare an instruction, a cautionary instruction, on the difference between the burdens of proof."

Additionally, the jury received an instruction which emphasized "[t]he defendant [was] on trial only for the offenses charged" and the jury "may not find the defendant guilty only because [they] believe he may have been involved in or committed other offenses or bad acts in the past." The instruction informed the jury, if it found and believed from the evidence Defendant "previously committed or was involved in the other offenses or bad acts," it may consider such evidence "on the issue of motive," to "present a complete and coherent picture of

11

the events that transpired," and "for the purpose of demonstrating [Defendant's] propensity to commit the offenses for which he is charged.

"The determination of how much and what kind of probative value particular propensity evidence may have, the nature and extent of the danger of unfair prejudice presented by that evidence, and whether the former is substantially outweighed by the latter, are intensely case-specific questions." *Id.* at 287. In *Williams*, the Missouri Supreme Court noted "factors to be considered in determining probative value and the weight given to them will vary from case to case." *Brammer*, 614 S.W.3d at 27 (citing *Williams*, 548 S.W.3d at 288). But these "factors are not elements." *Id.* (quoting *State v. Burge*, 596 S.W.3d 657, 665 (Mo. App. S.D. 2020)). We must first determine if the evidence has any probative value. *Prince*, 534 S.W.3d at 817; *Williams*, 548 S.W.3d at 288. Second, if the evidence is probative, we weigh its probative value against its costs, such as the danger of unfair prejudice. *Prince*, 534 S.W.3d at 817; *Williams*, 548 S.W.3d at 290.

### 1. Probative Value

The Court in *Williams* considered three factors in determining the probative value of propensity evidence permitted under section 18(c): the ability of a jury "to conclude the defendant actually committed the prior [charged or uncharged] criminal act"; the tendency of the evidence of the prior act "to show the defendant actually had a propensity to commit the charged crime at the time it is alleged to have occurred"; and "the prosecution's need" for the propensity evidence "to prove its case." 548 S.W.3d at 288–89. "Again, these are not necessarily the only factors that might be relevant in a given case, nor is any one of them necessarily controlling over the others." *State v. Shepard*, 662 S.W.3d 761, 771 (Mo. App. E.D. 2023), *reh'g and/or transfer denied* (Mar. 27, 2023); *see also Williams*, 548 S.W.3d at 288.

"Before propensity evidence can be said to have any probative value, it must be sufficient for the jury to conclude the defendant actually committed the prior criminal act." *Williams*, 548 S.W.3d at 288–89 (citing *Huddleston v. United States*, 485 U.S. 681, 689 (1988) (Evidence of a prior criminal act "is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor."). In *Williams*, the defendant pled guilty to the prior offenses, which "remov[ed] any doubt as to whether he had committed the criminal act . . . ." *Id.* at 289. Here, Defendant was never criminally charged with or convicted of the offenses against his son and stepdaughter from a previous relationship. But article I, section 18(c) "clearly allows for the admission of evidence of *uncharged* prior criminal acts." *State v. Brown*, 596 S.W.3d 193, 208 (Mo. App. W.D. 2020) (emphasis original). And even though the burden of proof was lower, the family court still found by clear, cogent, and convincing evidence Defendant sexually abused his son and stepdaughter from a previous relationship. *See In re B.H.*, 348 S.W.3d 770, 772 (Mo. banc 2011) (holding statutory ground for terminating parental rights must be found by clear, cogent, and convincing evidence). So, based on this evidence, the jury could reasonably conclude Defendant actually committed the prior criminal act. *Williams*, 548 S.W.3d at 288–89; *see also Brown*, 596 S.W.3d at 208 (victim testimony about acts of sexual abuse by the defendant was specific, unequivocal, and sufficient for jury to conclude the defendant actually committed the alleged uncharged acts). This factor indicates the propensity evidence had probative value. *See Brown*, 596 S.W.3d at 208.

"To be probative (i.e., logically relevant), the evidence of the prior criminal act must tend to show the defendant actually had a propensity to commit the charged crime at the time it is alleged to have occurred." *Williams*, 548 S.W.3d at 289 (citing *State v. Anderson*, 76 S.W.3d 275, 276 (Mo. banc 2002)) ("Evidence is logically relevant if it tends to make the existence of a

13

material fact more or less probable."). "In applying this factor, we take into account the 'the similarity between the prior criminal act and the charged crime' and the 'amount of time between the two.'" *Brown*, 596 S.W.3d at 208 (quoting *Williams*, 548 S.W.3d at 289). "[A]n inference of propensity might be proper notwithstanding a significant time lapse between the prior crime and the charged crime if the two crimes are highly similar." *Williams*, 548 S.W.3d at 289. But "an inference of propensity might not be proper if the prior crime and the charged crime are only somewhat similar unless the two occurred over a short span of time." *Id.*

Here, even though there was a lapse of approximately ten years between the prior uncharged criminal acts and the charged crimes, the trial court noted they were very similar. In the prior uncharged criminal acts, the family court found by clear, cogent, and convincing evidence Defendant sexually abused his son and stepdaughter, both minors. Specifically, the family court found Defendant sexually abused his stepdaughter "by placing his penis inside of her mouth, repeatedly forcing her to touch his penis with her hand and forcing her to place her naked body next to and on top of his" and his son "by inappropriately touching his penis through his clothing." The Victims in the charged crime were also Defendant's stepdaughters and both minors at the time of the incidents. Victim 1 testified during one incident, Defendant took her clothes off and forced her to lay naked next to and on top of him before Defendant performed oral sex on her. Victim 1 also testified Defendant repeatedly forced her to touch his penis. Victim 1 also testified Defendant again took off both of their clothes and on this occasion put his penis into her vagina. Given the similarity between the prior uncharged acts and the charged crimes, this factor indicates the propensity evidence had probative value. *See Brown*, 596 S.W.3d at 209.

"Finally, in determining the probative value of a particular item of propensity evidence, courts have looked to the prosecution's need for that evidence to prove its case." *Williams*, 548

14

S.W.3d at 289 (citing *United States v. Byrd*, 352 F.2d 570, 575 (2d Cir. 1965)). "Prior acts evidence need not be absolutely necessary to the prosecution's case in order to be introduced; it must simply be helpful or practically necessary." *Brown*, 596 S.W.3d at 209 (emphasis removed) (quoting *Williams*, 548 S.W.3d at 289). "The probative value of propensity evidence is enhanced where the only eyewitness to the sexual abuse is the victim, and the defense attacks the victim's credibility." *Id.* (citing *Williams*, 548 S.W.3d at 290).

Here, the State's need for the propensity evidence was substantial because the only eyewitnesses to the sexual abuse were Victim 1 and Victim 2, there was no confession by Defendant, and no physical evidence of the charged acts. *See Brown*, 596 S.W.3d at 209. Additionally, Defendant claimed the Victims were lying and these were false accusations. So, like in *Williams*, "[t]he unique evidentiary challenges presented by this type of case," along with Defendant's attack on the Victims' credibility, "enhanced the probative value" of Defendant's prior uncharged criminal acts evidence. *Williams*, 548 S.W.3d at 290; *Brown*, 596 S.W.3d at 209.

### 2. Unfair Prejudice

Having found the propensity evidence had probative value, we must next analyze whether the evidence was unfairly prejudicial. *Brown*, 596 S.W.3d at 209 (citing *Williams*, 548 S.W.3d at 290). The Court in *Williams* considered four factors in determining the danger of unfair prejudice of the propensity evidence permitted under section 18(c): the jury's knowledge or ability to infer the defendant was punished for his past criminal acts; how the State proves the prior act; whether the evidence of the defendant's prior criminal act is overshadowed by the evidence of the charged crime; and how the state uses the prior act at trial. *Williams*, 548 S.W.3d at 290–92. Again, these might not be the only relevant factors in a given case, and none are

necessarily controlling over the others. *Shepard*, 662 S.W.3d at 771; *see also Williams*, 548 S.W.3d at 288.

In determining the potential prejudicial effect of propensity evidence, one factor courts consider is "whether the jury knows or can fairly infer the defendant was punished for his past criminal acts." *Williams*, 548 S.W.3d at 290; *see also Brown*, 596 S.W.3d at 209. "If the jury is allowed to infer (or, worse, speculate) the defendant escaped punishment in the past, it may be inclined to convict merely to punish the defendant for past criminal acts rather than for the crime charged." *Williams*, 548 S.W.3d at 290; *see also Brown*, 596 S.W.3d at 209.

In *Williams*, because the jury knew the defendant was convicted for the past criminal acts, this risk was "minimized." 548 S.W.3d at 290. But, in *Brown*, the defendant was never charged or convicted of his prior sexual criminal acts. 596 S.W.3d at 209. In *Brown*, the court concluded the risk was "increased" given the jury "clearly knew" the defendant "was not punished for his prior uncharged criminal acts" against the victims because the defendant "used the fact that he was never charged or convicted to argue that the propensity witnesses were not credible . . . ." *Id.* at 209–10. Here, like in *Brown*, the jury knew Defendant was not punished for his prior uncharged criminal acts because Defendant used the lack of charges or criminal convictions to argue the validity of the family court's findings were not credible. *See id.* at 209. But here, the jury received an instruction emphasizing Defendant was "on trial only for the offenses charged" and the jury "may not find the defendant guilty only because [they] believe he may have been involved in or committed other offenses or bad acts in the past." The jury also received, within the family court findings, a definition of the clear, cogent, and convincing evidence standard used to make those findings. Additionally, the jury received a separate instruction explaining the burden as to the charged crimes was beyond a reasonable doubt. So,

16

even though there might have been a risk the jury may "have been inclined to convict" Defendant for his past uncharged criminal acts rather than for the crimes charged, or because of the lower burden of proof for the uncharged acts, these risks are low given it would have contradicted the trial court's instructions, which we presume the jury correctly followed. *Id.* at 210; *Shepard*, 662 S.W.3d at 771; *see also State v. Banks*, 582 S.W.3d 919, 926 (Mo. App. E.D. 2019). Even then, this just "one factor to consider in the overall balancing test and is not determinative." *State v. Davison*, 636 S.W.3d 588, 595 (Mo. App. W.D. 2021).

"[T]he manner in which the state proves the prior criminal act at trial" may also increase the risk of unfair prejudice from propensity evidence. *Williams*, 548 S.W.3d at 290 (citing *Old Chief v. United States*, 519 U.S. 172, 183 (1997)). If the trial court "allowed the State to prove the prior crime by calling the former victim to describe the abuse, '[s]uch testimony, of course, would have increased the danger of unfair prejudice.'" *Brown*, 596 S.W.3d at 210 (quoting *Williams*, 548 S.W.3d at 290). But such danger is "minimized" if the prior act is proven "by way of a short, dispassionate stipulation" or exhibit. *Id.* (quoting *Williams*, 548 S.W.3d at 290); *see also Shepard*, 662 S.W.3d at 771. Here, no former victims testified. The trial court limited the termination of parental rights judgment by allowing the State to present the family court findings via an exhibit which stated the above-mentioned findings and the burden of proof applied. Thus, the danger of unfair prejudice was "minimized" because Defendant's prior sexual acts were proven "by way of a short, dispassionate" exhibit. *See Williams*, 548 S.W.3d at 290.

"Another factor that bears on the danger of unfair prejudice from propensity evidence is whether the evidence of the defendant's prior criminal act eclipses—or is overshadowed by—the evidence of the charged crime." *Id.* "Evidence the defendant previously sexually abused a young child is highly prejudicial in the abstract, but there is far less danger of unfair prejudice from

17

such evidence in a prosecution for sexually molesting a young child than there would be in a prosecution for a less heinous crime." *Id.* In *Williams*, the evidence of the defendant's prior criminal act, introduced by way of "a short, dispassionate stipulation," was "'far less alarming than the evidence of the charged crimes,' which included graphic testimony from the victim of the sex acts he forced her to perform and the threats he made against her if she told anyone." *Brown*, 596 S.W.3d at 210 (quoting *Williams*, 548 S.W.3d at 290–91).

Here, the evidence of Defendant's uncharged prior crimes was disturbing, but it was introduced "by way of a short, dispassionate" exhibit and was "far less alarming than the evidence of the charged crimes." *Williams*, 548 S.W.3d at 290. The Victims testified, in graphic detail, to the instances of sexual abuse Defendant committed against them. Thus, the family court findings did not eclipse the extensive testimony about Defendant repeatedly forcing sexual acts or intercourse upon the Victims and repeatedly exposing himself to them. *See Shepard*, 662 S.W.3d at 771.

"Lastly, in examining the prejudicial effect of propensity evidence, courts consider the manner in which the State used the propensity evidence at trial." *Brown*, 596 S.W.3d at 211 (citing *Williams*, 548 S.W.3d at 291). If the State "spends an undue amount of time emphasizing the prior criminal act or flagrantly invites the jury to convict the defendant because he is a 'bad' or 'wicked' man rather than because he committed the crime charged, the danger of unfair prejudice from that evidence quickly becomes untenable." *Williams*, 548 S.W.3d at 291. Whereas if the State "spends relatively little time on the issue of a defendant's prior crimes and merely uses the evidence for its proper purpose (namely, to suggest the defendant has a propensity to commit the charged crime), the danger decreases and may—on balance—not be unfair." *Id.*

Here, the State devoted comparatively little time to the subject during trial. In its opening statement, for example, the State merely informed the jury they would hear from Uncle who was worried about a statement the Victims' younger sister made to him given he knew of information about Defendant's prior sexual abuse of his son and former stepdaughter. On direct examination, the State elicited testimony about Defendant's prior uncharged act from Uncle, but in the context of why Uncle kept thinking about the younger's sister comment and why he was so worried. The State only asked Mother about the prior uncharged acts on redirect examination after defense counsel used Mother's knowledge of the prior uncharged acts to undermine the possibility the charged crimes could occur. When the State's case-in-chief ended, it admitted the limited family court findings and published it to the jury. During its closing argument, the State even clarified the incidents the jury was deciding guilt on were not the sexual abuse of his son and former stepdaughter, they were deciding guilt on the acts as testified to by the Victims. The State further clarified the former sexual abuse findings were "only relevant for the context that they provide [the jury] for the offenses that [they were] talking about today" and the jury could "use them as evidence of Defendant's motive, the surrounding circumstances, and his propensity to commit the crimes charged." The State then made a single reference in the context of why Uncle was suspicious of Defendant and why Uncle asked the Victims if Defendant touched them.

As to Uncle's testimony, the references to Defendant's prior uncharged acts were offered as an explanation for why Uncle was worried about the younger sister's comments to him and why he asked the Victims if the Defendant touched them, which led to the Victims disclosing what Defendant did to them. In other words, the references to Defendant's prior uncharged acts were part of the circumstances and sequence of events surrounding the charged offenses and thus admissible. *Prince*, 534 S.W.3d at 818 (quoting *Schneider*, 483 S.W.3d at 505) (Evidence "of

19

uncharged crimes that is part of the circumstances or the sequence of events surrounding the offense charged may be admissible 'to present a complete and coherent picture of the events that transpired.'"). As for the remaining references to Defendant's prior uncharged acts, such remarks were only a small part of the State's argument. *See Williams*, 596 S.W.3d at 291–92; *Robinson*, 662 S.W.3d at 127. Thus, on the record before this Court, we cannot say the State increased the danger of unfair prejudice in this case by "unduly emphasizing" Defendant's prior uncharged acts. *Compare Williams*, 596 S.W.3d at 291–92 (short reading of stipulation regarding prior criminal conviction and brief references in opening statement, on direct examination of witnesses, and during closing argument to prior criminal acts did not increase danger of unfair prejudice), *and Robinson*, 662 S.W.3d at 127 (limited testimony from victim of defendant's prior acts only taking up twelve pages of transcript did not constitute a "trial within the trial" scenario), *with Brown*, 596 S.W.3d at 211–12 (presentation of graphic, emotionally-charged testimony from victims of defendant's prior acts and use of the propensity evidence to repeatedly call defendant a pedophile increased the danger of unfair prejudice).

Because the evidence concerning Defendant's prior uncharged sexual acts had considerable probative value and the danger of unfair prejudice from such evidence was not great, the latter did not substantially outweigh the former, and thus, the trial court did not abuse its discretion by admitting the evidence. Points I and II are denied.

*Point III: Admissibility of Testimony About Suicide Attempts*

A. Mother's Testimony

During direct-examination of Mother, Mother testified the following:

Q      Was it hard for you to come to terms with the fact that you could have married a man that had done this to your kids?

A      Yes. He loved us. He took care of us. He was our provider.

20

Q      Did you eventually – were you able to come to terms with what he did?

A      Yes.

Q      What helped you get there?

A      His suicide attempts.

. . .

Q      So his suicide attempts, that was something that helped you come to terms with what he had done?

A      Yes, because if he didn't do it, why do that? Why not fight?

Q      How soon after the [Victims'] disclosures came to light was – did a suicide attempt occur?

A      Two days later.

. . . .

## B. Party Positions

In Point III, Defendant argues the trial court abused its discretion in overruling objections to testimony from the Victims' mother about Defendant's suicide attempts because this evidence is irrelevant to Defendant's guilt of the charged offenses and prejudicial in that the State used this evidence to bolster the credibility of the Victims' when their Mother testified that the suicide attempts caused her to believe the allegations about Defendant. Prior to trial, defense counsel filed a motion in limine to exclude evidence of Defendant's suicide attempts and the trial court ruled this evidence would be excluded unless the defense opened the door. The trial court later ruled Defendant opened the door during cross-examination of Uncle. Defendant argues he did not open the door because Uncle continued to answer he "believed" the Victims. Defendant contends his cross-examination of Uncle concerned Uncle's continued response he "believed" Victims. Defendant notes "[y]et it was after [Uncle] and another witness testified, and before [Mother's] testimony, that the prosecutor asserted and the court ruled that defense counsel had opened the door to the suicide attempts." So, Defendant argues the trial court erred in ruling he opened the door for evidence of his suicide attempts.

Defendant further argues evidence of the suicide attempts was irrelevant and prejudicial. Defendant argues after Mother testified she believed the Victims' allegations following Defendant's suicide attempts, "the jury would have assumed that the suicide attempts were evidence of [Defendant's] guilt." Defendant contends "[y]et it is just as likely that any suicide attempts were caused by the anguish of false sexual abuse allegations." *See generally State v. FrancoAmador*, 83 S.W.3d 555 (Mo. App. W.D. 2002). Thus, Defendant argues the trial court abused its discretion in allowing evidence of Defendant's suicide attempts because it was "so unduly prejudicial that it renders the trial fundamentally unfair . . . ." *Lisenba v. California*, 314 U.S. 219, 228–29 (1961).

The State argues the trial court did not abuse its discretion in admitting Mother's testimony about Defendant's suicide attempts after Victims disclosed his sexual abuse against them because Defendant opened the door to its admission and it was relevant to show his consciousness of guilt. The State argues evidence otherwise inadmissible because it is not relevant can "nevertheless become admissible because a party has opened the door to it with a theory presented . . . ." *State v. Rutter*, 93 S.W.3d 714, 727 (Mo. banc 2002); *see also State v. Ralls*, 918 S.W.2d 936, 939 (Mo. App. W.D. 1996) (quoting *United States v. Durham*, 868 F.2d 1010, 1012 (8th Cir. 1989)). The State argues on cross-examination, defense counsel elicited testimony from Uncle that Mother initially said Uncle "put the kids up to it" and Mother "originally believed that because of [his] dislike of [Defendant], that [he] manipulated the kids into making these allegations[.]" The State notes defense counsel further asked Uncle "[n]ow, [Mother] didn't start believing you and the accusations until she learned that [Defendant] had actually been seeing an adult woman from work . . . isn't that correct?" The State contends defense counsel argued in its closing Mother did not believe Victims' allegations against

Defendant and only changed her mind after discovering Defendant was having an affair. The State argues defense counsel opened the door to evidence showing the reason for the change in Mother's belief of the Victims' allegations against Defendant. The State contends because "defendant opened the door to the question of why [Mother] came to believe the [V]ictims' allegations against Defendant," it was appropriate to admit Mother's testimony "that it was because of Defendant's suicide attempts." *See State v. Madrigal*, 652 S.W.3d 758, 773–74 (Mo. App. E.D. 2022).

As to relevance, the State "evidence that the accused attempted to commit suicide is relevant as a circumstance tending . . . to show consciousness of guilt." *Aldridge v. Georgia*, 494 S.E.2d 368, 370 (Ga. Ct. App. 1997) (quoting 1 Wharton's Criminal Evidence § 159 (14th ed. 1985)); *see also New Jersey v. Mann*, 625 A.2d 1102, 1107 (N.J. 1993). The State argues Mother's "testimony that Defendant attempted to commit suicide . . . was admissible to show Defendant's consciousness of guilt." The State contends because of the "closeness in time" between the Victims' "disclosure of Defendant's sexual abuse against them and Defendant's suicide attempt, such evidence was relevant as tending to show Defendant's consciousness of guilt, and any argument that Defendant's suicide attempt was not indicative of a consciousness of guilt went to its weight and not admissibility." *See Aldridge*, 494 S.E.2d at 370; *State v. Culpepper*, 505 S.W.3d 819, 831 (Mo. App. S.D. 2016). So, the State concludes it was not an abuse of discretion to admit Mother's testimony about Defendant's suicide attempts.

## C. Analysis

The trial court initially ruled evidence of Defendant's suicide attempts would be excluded unless the defense opened the door. "Otherwise inadmissible evidence 'can nevertheless become admissible because a party has opened the door to it with a theory presented in an opening

23

statement' or through cross-examination." *State v. Shockley*, 410 S.W.3d 179, 194 (Mo. banc 2013) (first quoting *State v. Rutter*, 93 S.W.3d 714, 727 (Mo. banc 2002); then citing *State v. Watson*, 391 S.W.3d 18, 23 (Mo. App. E.D. 2012)). "Where the defendant has injected an issue into the case, the State may be allowed to admit otherwise inadmissible evidence in order to explain or counteract a negative inference raised by the issue defendant injects." *State v. Betts*, 559 S.W.3d 47, 58 (Mo. App. E.D. 2018) (quoting *Shockley*, 410 S.W.3d at 194). And "the evidence may be used substantively in order to prove the State's version of the facts on the issue the defendant injected into the trial." *Id.* (citing *Watson*, 391 S.W.3d at 23).

Here, the trial court later allowed Defendant's suicide attempts ruling the door was opened based on testimony elicited from defense counsel during its cross-examination of Uncle. We agree. Defendant injected the issue of why Mother came to believe the Victims' allegations against Defendant during Uncle's cross-examination:

> Q     And you say that you believe [the Victims], right?
>
> A     I believe them.
>
> Q     That was not the case with [Mother] that day –
>
> A     No.
>
> . . .
>
> Q     [Mother] said that you put the kids up to it?
>
> A     She did say that, yes.
>
> Q     She originally believed that because of your dislike of [Defendant], that you manipulated the kids into making these allegations?
>
> A     Because of the fight, yes.
>
> . . .
>
> Q     And now a few months down the road, [Mother] claims that she now believed you, correct?
>
> . . .

24

Q     Now, [Mother] didn't start believing you and the accusations until she learned that [Defendant] had actually been seeing an adult woman from his work, that she learned after these accusations; isn't that correct?

As made in his closing argument, Defendant attempted to argue Mother at first did not believe the Victims' allegations against Defendant and thought Uncle manipulated the girls into making the stories up. Defendant attempted to argue Mother only changed her mind once she discovered Defendant was having an affair and, if Defendant was in jail, it would be easier for her to get a divorce from him. Thus, because Defendant injected the issue of why Mother came to believe the Victims' allegations against Defendant during Uncle's cross-examination, the State was allowed to elicit testimony from Mother about such change of belief, which was due to Defendant's suicide attempts. *See Shockley*, 410 S.W.3d at 194.

Beyond explaining why Mother came to believe Victims' allegations, Defendant's suicide attempts were admissible to show consciousness of guilt. *See State v. Painter*, 44 S.W.2d 79, 82 (Mo. 1931). "[O]ne guilty of the charge might prefer to avoid the humiliation and disgrace of a conviction and escape the punishment imposed by law by taking his life, just as he might seek to accomplish the same result by flight or escape from custody." *Id.* (quoting *People v. Duncan*, 103 N.E. 1043, 1049 (Ill. 1913)). "Evidence of flight is admissible to show consciousness of guilt." *State v. Griffin*, ED 110282, 2023 WL 2976202, at *5 (Mo. App. E.D. Apr. 18, 2023), *reh'g and/or transfer denied* (May 23, 2023) (quoting *State v. Hosier*, 454 S.W.3d 883, 895 (Mo. banc 2015)). So, like evidence of flight, evidence of a defendant's attempted suicide is admissible to show consciousness of guilt. *Painter*, 44 S.W.2d at 82; *see also Griffin*, 2023 WL 2976202, at *5 ("Flight may occur from the scene of the crime or elsewhere if it is in order to avoid arrest or prosecution."); 2 McCormick On Evid. § 263 (8th ed.) (suicide attempts by the accused constitute evidence of consciousness of guilt); 23 C.J.S. Criminal Procedure and Rights of Accused § 1037 ("Evidence that a defendant attempted or

threatened suicide, subsequent to the time the crime was committed, is generally admissible as indicating a consciousness of guilt."); 2 Jones on Evidence § 13:8 (7th ed.) ("Evidence that an accused attempted suicide when confronted with the accusation is relevant evidence of consciousness of guilt and therefore admissible as evidence of guilt.").

Here, Defendant attempted suicide twice, first two days after the Victims' disclosures about the sexual abuse, and second approximately two weeks later. While Defendant's suicide attempts do not "raise[] a presumption of guilt," they were "a circumstance which might properly be proved and taken into consideration by the jury in connection with all the other facts and circumstances proven." *Painter*, 44 S.W.2d at 82. In other words, evidence of Defendant's suicide attempts was admissible, but it was for the jury to determine whether the alleged suicide attempts were entitled to any weight as to Defendant's consciousness of guilt. *Id.*; *see also Griffin*, 2023 WL 2976202, at *5.

Because Defendant opened the door to the issue of why Mother came to believe the Victims' allegations against Defendant and suicide attempts may be admissible to show consciousness of guilt, the trial court did not abuse its discretion in allowing Mother's testimony about Defendant's suicide attempts. Point III denied.

### Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

_____
Philip M. Hess, Judge

Kelly C. Broniec, P.J. and
James M. Dowd, J. concur.

26